And our third case is Parks v. BitConnect International. And Mr. Buschel, Ms. McCabe, and Mr. Richland. And Mr. Buschel, if you are ready to proceed, please begin. Thank you, Judge Grant. May it please the court. Daniel Buschel on behalf of the plaintiff's appellants. This appeal raises a narrow question. The district court dismissed the claims against the promoter defendants because it concluded that it did not plausibly allege that the promoter defendants were what is commonly referred to as statutory sellers. In other words, that they engaged in conduct for which they could be held liable under Section 12A. Section 12A imposes liability on any person who offers her sales as security. In Pinter, the Supreme Court explained that Section 2.3 defines sell to include an offer to sell. And that term is defined as including a solicitation of an offer to buy, which the court said brings in an individual who engages in solicitation. The Supreme Court held that this includes a seller's broker, which is similar to what we alleged the promoter defendants are. And the Supreme Court noted that the purpose of the Securities Act is to promote full and fair disclosure of information in the sale of securities. The court said, however, that a person who solicits an investment whose motivation is solely to benefit the buyer is not under the auspices of liability. So in other words, the motivation has to be to realize a financial benefit for the defendant or for the owner of the security. There's no dispute here that the second amended complaint alleges that defendants had both motivations. They were employed on behalf of BitConnect and they earned commissions for sales of BitConnect coins. The issue here is only whether the alleged conduct constituted solicitation. The second amended complaint alleges that Arcaro, in addition to being the national promoter of BitConnect for the United States, in which he managed all promoters and assisted them with promotions and was compensated for their sales. But he was also himself one of the most successful recruiters for BitConnect, soliciting hundreds, if not thousands of BitConnect investors in the United States and abroad through social media sites such as YouTube and Facebook. Mr. Bichelle, let me ask you a question. I know we're at the motion to dismiss stage and we haven't had discovery and I had my law clerk check the record. We don't actually have the videos at issue as I understand it, but I've looked at the complaint and the gist I get about these videos is that Mr. Arcaro or other promoters would go on and talk about BitConnect generally and then perhaps the video ends or includes a solicitation to purchase and gave the viewer the information necessary to purchase BitConnect. Am I correct? Yes, you are correct. Okay, so you have alleged in the complaint that the solicitation is actually, it's not just an actively soliciting anybody who might be viewing to purchase BitConnect. Correct. And there are some examples in the amended complaint of some of the, there's some images of websites that were created in which it shows the link to it and says, you know, start earning money now by clicking on this link. There's also some and other promoters regarding what their messaging will be and how they'll go on to certain forums where other high-risk investments are being promoted and talk about how this is a better investment, you'll learn more. And there are also many allegations regarding how the defendants encouraged the viewers to go to the website of BitConnect, which would promise enormous returns on investments as well. So the district court dismissed this action because the district court found that there was no personal relationship between the promoter and those who had purchased BitConnect. And I, so I guess this, this is going to come down to whether anybody who is putting out a video on the internet soliciting these sales could ever be a statutory seller because necessarily anybody who's putting out a video onto the internet doesn't have a personal relationship. So, you know, the district court, I'm not, I'm guessing that the district court's relationship requirement is coming from Pinter, which is saying that the inquiry should focus on the defendant's relationship with the plaintiff purchaser. And so can you speak to what we have the district court saying and Pinter, and can you tell me why that's wrong? Yes. So first of all, I want to clarify, it's not anybody who puts out a video. It's, these defendants are not just alleged to put out videos or they're alleged to have been working for BitConnect and to be specifically compensated for soliciting sales. So, so it's not just, if I go out and put out a video for BitConnect and I have no relationship to the company, that doesn't bring me within the between the defendant and, or the seller and the buyer in order to distinguish essentially buyer's agents and seller's agents. And this court, it also goes into that in Ryder where the defendant was the bank through which the plaintiff, you know, made his investments, but it wasn't specifically working for the seller of the investment. And in that sense, the court said, we look at the, at the relationship and similar, similarly in Pinter, then when the court was discussing this, the substantial participation standard, which had been used in some of the courts of appeals, it said, no, it's not enough that there's, that you were involved in the transaction. The question is, what did you do in relationship to the purchaser? So that's what was meant by the, by the term, the personal relationship. And I think that the district court also may have been influenced by some language in this in-race CNL hotels case, which also speaks about a personal relationship and sort of extends it. Although that's really, it was really a factually distinct case from, from what was alleged here. But as we've noted in our, in our briefs, certainly the personal relationship requirement is not anything warranted by the plain meaning of solicitation. The plain meaning of solicitation can include all kinds of communications, whether they're personal conversations or, you know, through any, any types, many types of means. We all understand that we get mail solicitations, we get email solicitations, we get phone solicitations, we have solicitations that are on billboards. And there are many statutes which use the term solicitation in regard to all different types of, of communications that are not one-on-one personal conversations. And we cite some of those in our briefs. I've got a question for you on, on a related topic. The district court says that plaintiffs in this matter fail to allege that they purchased securities as a result of our Caro and Lawson solicitations. Do you disagree with that conclusion by the district court? Yes, absolutely. Where, can you direct me specifically in your, I guess, third amendment complaint to where you allege that the purchases were as a result of those solicitations? Yeah, I mean, first of all, I would just point out that the district court says both things. It has that sentence where it talks about as a result, but it also says that the plaintiffs did allege that they purchased as a result of the, of the solicitations. But I can, but in the, in the second amended complaint, so in paragraphs 29 through 32, in paragraph 29, it alleges that Plaintiff Maryshall completed the training program available on defendant or Caro's primary website. The funnel investments into BitConnect, futuremoney.io. Following Plaintiff Maryshall's completion of training on futuremoney.io, Plaintiff Maryshall invested approximately 1.52838 Bitcoin into the BitConnect investment programs. Then it talks about Plaintiff Yu and says Plaintiff Yu of Yu defended our Caro's and Lawson's YouTube videos and signed up for BitConnect through their affiliate programs. Then it talks about Plaintiff Arius viewed defendant our Caro's and Fox's YouTube videos and signed up for BitConnect through defendant Fox's referral through the affiliate program. Same thing with, it talks about Struzan viewed the video, YouTube videos, and then signed up through the affiliate programs. But you know that we can infer, you think that we can infer since we're at the motion to dismiss stage that watching the YouTube videos led to the purchases, is that right? Yeah, absolutely. But you have not, you've said they watched a video, I mean, honestly, the video could just be like this, it could just explain this is how BitConnect works and not end with a solicitation. Why are we able to infer that there was a solicitation when at least that part of the complaint doesn't say so? Well, I mean, I think that the, well, that's in different allegations in the complaint, it certainly does allege that the videos were specifically targeted to encourage them. We talked about the training program, quote unquote, that Mr. Caro designed, that was ostensibly a training program on how to invest in cryptocurrency in general. But the last three lessons were entitled opening your BitConnect account and etc. So there definitely are allegations in the complaint specifically stating that the contents of the videos and social media posts were specifically urging investments and promoting the advantage of investing in these BitConnect coins. And you were looking at the second amended complaint, is there a reason you're not looking at the third amended complaint? Yes, the third amended complaint was filed at the direction of the district court against defendants other than those that were dismissed with prejudice in the order dismissing the second amended complaint. So the order dismissing the second amended complaint is the complaint that relates to these defendants. But I see my time is up, unless there's other questions, I will reserve the remainder. Thank you. Ms. McCabe. Morning, your honors. My name is Juliana McCabe, may it please the court, appearing on behalf of defendant Glenn Arcaro, one of approximately 16 individual defendants in this case against whom the plaintiffs asserted securities law claims that were ultimately dismissed with prejudice by the district court. I'm going to be sharing my time this morning with Mr. Ricklin who represents YouTube. And so I'll have the first 12 minutes and then he has three minutes reserved. Okay, I'll get right to my question. Can you point to where the statute requires a personal relationship between the seller and the purchaser? That's a really good question. And the personal relationship issue came directly out of the the word personal comes from the plaintiff's allegations, not the district court's analysis of what the standard is. The district court was merely quoting the plaintiff's complaint when he said that they were personally and successfully solicited by Mr. Arcaro. What the standard is, is whether or not the plaintiffs were successfully solicited to purchase securities by Mr. Arcaro. So the word personal does not. You don't think that the statute requires a direct solicitation to a particular known person by the seller? I do think that the statute, I think it's kind of sort of parsing words here, but I do think, I just wanted to make clear that the district court did not impose a word in his standard that's not in the statute. Yes, after Ryder, the Ryder case which interpreted and applied the Supreme Court's decision in Pinter, it's clear in the circuit that the relationship between the defendant alleged seller and the purchaser needs to be a direct relationship such that it was the defendant's contact directed at the purchaser that resulted in the purchaser buying the security. And I think the complaint as was inferred, and I want to point out that the district court dealt with this case for 19 months before finally throwing up his hands and dismissing this second amended complaint, which was actually the sixth complaint in the case with prejudice because he had informed the plaintiff in his prior substantive dismissal order what the deficiencies were in the complaint. At that time, there were two lead plaintiffs. They had not alleged anything related. They had not even alleged that they personally viewed Mr. Ricardo's videos. And so instead of amending their allegations to correct the deficiencies, they amended, they filed the second amended consolidated class action complaint, which was the sixth complaint in 19 months. And they added new plaintiffs without leave of court, they added four new plaintiffs. And even with respect to these four new plaintiffs and with the district court's very specific instructions as to what to be alleged in order to specifically alleged facts that would create statutory seller liability, they still did not allege that it was Mr. Ricardo's videos that resulted in the purchase of the securities by these particular plaintiffs. In fact, they were like, would it be possible in your view to properly allege a complaint based on a an individual watching a video from someone that they were not personally acquainted with and deciding on the basis of watching that video to purchase an unregistered security? Would it be possible to plead a to state a claim in that case? And not without additional facts, I think there would have to have have to be a connection and and some sort of communication between the two through which they're the the alleged seller actually affirmatively attempts to persuade that particular buyer to purchase. Okay, so I'm glad we're getting to the nub of it. So where do you think that that requirement for direct known contact between the seller and the buyer comes from in the statute? Sure, I think that comes from the pincer and rider cases, which specifically state that the court has to rely on the statutory language. And a particular statutory language where I think that I think is key is so under section 12. Under section 12. B, the the person who sells an unregistered security is strictly liable to the person basically purchased such security from him. And I think that's where the directness comes in. The statute makes clear that the security had to have been purchased. Sorry, I thought counsel, excuse me. I thought that enter in those pre textual era days. Well, don't worry about that. It just requires to be a sale. And it's a correlative relationship. Blackman wrote it. The reasons I don't understand Scalia went along with it was a one decision. And they basically said don't sweat that language. You don't have to buy it from the it's not just the person who directly sells it to this law. Even though the statute says exactly that. You're absolutely right, Judge Karnes. So that was that's the privity test. The court actually in Pinter said there doesn't have to be privity. The person who sells solicits the sale doesn't have to actually own the security that they're selling to the buyer. But Pinter did not go so far as to say that liability extends to someone with no, you know, direct contact with the buyer. Like here, that's a different that's a different question. I think what Pinter said, if you get commission, then you count as a seller. But where does Pinter say, you need direct contact with a known person in order to sell to that person? Sure. I think so. Ryder, I think, says that after Pinter based on Pinter's language, that liability extends to the person who successfully solicits the purchase. There's a two prong test. One is the purchase has to have the sale has to have been made in furtherance of their own financial interest, which is the first part you mentioned, Judge Grant. And the second part is the sale has to have been made by a person who successfully solicits the purchase. So based on that language, there has to be some directness between the buyer and the seller. When a candidate puts out a fundraising appeal and sends it to everyone's text or email, and various people respond and contribute money to that candidate, has that candidate successfully solicited a donation to their campaign? Okay. So I think what's missing in that analogy is the statutory language of the Securities Act. And you have to keep in mind that as the Pinter court pointed out, this is a strict liability statute. So you cannot divorce the word solicitation from the fact of the rest of the language of the statute. And the statute says that the person has a cause of action against the stock or the, you know, the alleged security to them. So... What if, why is it not enough in a complaint to say, I watched Akaro's video, and as a result of Akaro's video, I followed his instructions and bought the security? So I think the complaint does not adequate, it does not allege those facts. The complaint alleges in conclusory terms, the same thing that the complaint prior to it alleged, which was that all of these promoters, including Akaro, put out this content, the plaintiffs encountered the content while they were researching, and subsequently the plaintiffs bought. Well, looking at paragraph 26 of the second amendment complaint, they've already defined the Bitcoin defendants includes Akaro. Plaintiffs actively researched BitConnect and the BitConnect programs prior to making purchases. And then that each of the plaintiffs were personally and successfully solicited by the BitConnect defendants in connection with their public representations and active solicitations to purchase BitConnect or participate in the investment program. Why is that not enough? That's not enough because that is a conclusory allegation directed at all of the defendants. There were 16 promoter defendants and it does not include any sort of factual information about the precise nature of how that plaintiff, any of those particular plaintiffs actually purchased the BCC. Did they purchase it through Akaro? Did they purchase it through Masson? Did they purchase it through one of the other promoters? They very precisely failed and intentionally failed to include that factual allegation and What if the complaint said, I watched a video by Mr. Akaro. That video persuaded me that I should buy BitConnect. So I clicked on the link on Mr. Akaro's video at the end of it and purchased BitConnect. Why would that not be enough? So, I mean, I think that is a close question. And I think under the other district court cases that have been decided in this circuit, that would not be enough because Mr. Akaro himself was not involved in any communication with that person prior to that happening. And I think Judge Middlebrooks probably would have rejected that. Why wasn't, well, right, but we get to decide. Why wasn't his video a communication? Oh, the video is a communication. It is a communication. It's not a direct communication. There's no direct relationship. And Pinter says that you have to focus on the relationship between the buyer and the seller. So Pinter expands liability beyond privity, but just enough to capture those people that are engaged with a potential buyer and convince them to buy. Mr. Akaro walked up to one of the plaintiffs on the street holding his phone and silently pushed play and played the video. And then the defendant said, great, that's for me and clicked the link. Would that count as a personal communication interview? A direct communication? So are you saying that Mr. Akaro said nothing to the person? No, said nothing. Walked up to them and played the video on his phone for them. And they said, well, that convinces me I want to buy. No, I don't think so. I don't think so, Judge Grant. Not under Pinter. Pinter has said there has to be a relationship. And you are taking what the district court said, saying personal relationship. But that's not what Pinter said. Pinter was trying to say, there are going to be some people who are attorneys and whatnot who were involved just tangentially to the transaction. And we're not going to worry about them. You have to look at the relationship. Why can't we have that relationship of somebody watches the video and says, that has persuaded me. I'm going to push the link that that video told me to do. Where do we get to the personal relationship part? So I think it's more directness than personal. And I think that there has to have been a direct communication between the buyer and the seller. And if you want to expand liability beyond that. Counsel, I don't understand what you mean by direct. I mean, we're not living in the 1980s. There are direct communications online all of the time. If somebody calls another person up, cold call, spam, trash call, as we call it, and says, I've got a Zoom message for you. Would you hook up with me on the phone on Zoom? And the guy says, sure. How'd you get my name? He says, I don't know you from Adam's house yet. I just got this from a list of spam targets. But listen to me. I've got this great idea about BitConnect. And he talks to that person over Zoom. And that person buys BitConnect coins as a result. Would that satisfy the direct relationship? Absolutely. Yes, I believe that. Suppose instead of that, somebody else arranges, he has 1,000 people on a live video broadcast. I don't even know what you call it. But he had it. And there were 1,000 people watching. Does that satisfy direct relationship if they act involved? You're saying that Mr. Caro, is he intentionally? So I'm distinguishing between him reaching out. He said, get me 100 people. Get me 100 people, however you get them. Look, we stole some information about people's financial ability. These guys are fat targets. Get me, I don't even know any of them. I haven't even looked at their particular names. But I know they've got over a quarter of a million dollars in liquid assets. Yes. And I think that's different from what we have here. Because I think he's intentionally reaching out. I'm not asking you, counsel, whether it's different from what we have here. I'm asking you is, would that be a direct relationship that you say is required with this kind of liability? As I understand your hypothetical, where Mr. Caro has engaged someone to collect those folks and has himself and convinced them to buy the security. No, he has not spoken to each of them directly. He's got 1,000 of them. Correct. He spoke to them. Whatever social media permits that. And he makes the pitch, and he never introduces any of them. He never goes in their home, never buys them a cup of coffee. He just makes the pitch, a la live YouTube, let's call it. Now, is that a direct relationship for your purposes? I think if he procured those people to come to that YouTube video, then yes. If he's putting something out to the general public, then no. There is a procurement requirement you're going to read into, Pinter and Ryder. It's just a direct. I just use that word in place of direct, your honor. Because you couldn't justify direct, so now you ship it to procure. Direct. It's direct. I think that is direct. And I think that Congress could alter the statute or the SEC could create regulations. And these plaintiffs may also have other causes of action. But this is a strict liability statute for sale. The problem I have with your position, counsel, and I'm not trying to persuade you, of course, I'm just telling you my problem. Is you say, in effect, that soliciting everybody is soliciting nobody. And I just don't believe the statute can be read that way. I don't believe Pinter requires that, or Ryder. But I appreciate you engaging with me on my questions. Thank you, your honor. And I see my time is up. Thank you. Thank you, Ms. McCabe. Mr. Richland, you have three minutes. Yes. Good morning, Judge Branisch. Good morning, your honors. And may it please the court, Eli Richland of Wilson, Sonsini, Goodrich, and Rosati for defendant and appellee YouTube. Mr. Richland, I understand that YouTube was dismissed by the district court and that's not being challenged on appeal, correct? That's our understanding as well. I think that was confirmed in the reply papers from the appellant. It was not clear at the time the appeal was filed. I think it's now been confirmed once again by the decision by counsel for the appellant not to address YouTube. So I think in our position as set forth in our papers was that that's an abandonment of the claim against YouTube and the decision below should be affirmed on that basis as well. Separately, to the extent that the court had questions, we were here to the extent that there was a determination that there was not an abandonment of the claim. We do believe that the district court got it right on the merits. The sole claim that appellants asserted against YouTube was a negligent failure to warn claim. In essence, that YouTube should be held responsible for the videos that were posted on the YouTube platform. And in a carefully reasoned decision, the district court found that this claim runs headlong into the statutory immunity afforded to YouTube under section 230 of the Communications Decency Act, which has been recognized by this court in the 2014 Delbanco decision, among other decisions, as well. Counsel, counsel, we've got it. You can say thank you and send your client's bill. I'm happy to do so. Thank you very much. All right. Mr. Bushell, you have three minutes on rebuttal. Thank you. Just a few quick points. One is there's some some question about what the district court actually held and was it based on personal relationship or not. And I would just ask the court to look at the section of the of the what we refer to as the second dismissal order, which is document 133, beginning at page 11, where the where the court actually discusses why it was dismissing that count. And in the last paragraph, the court says, like the allegations made in the consolidated complaint, SAC fails to allege that either defendant engaged in active efforts to urge or persuade any of the defendants of the plaintiffs to invest in BITCONNECT. Rather, plaintiffs attempt to establish liabilities simply because certain plaintiffs encountered and interacted with publicly available content made by defendants while researching BITCONNECT. And these plaintiffs claim to have subsequently invested in BITCONNECT as a result of viewing, completing defendant Arcaro Mark and Massen's BITCONNECT related materials. So I think that makes pretty clear what the basis of this decision was. I want to point out that the when you were talking about, you know, directing your solicitation to an individual, I think that when you post a video on YouTube, you are directing it to whoever views it, who you hope will be lots of people. And that's why you put it on the Internet to begin with, rather than having a personal conversation. And then I just wanted to add that I would ask, there was a question before about how do we know that these videos were directed to the court to paragraphs 158 to 160 of the Second Amendment Complaint, where there's actually images of some of the content. One of them says passive income is a click away. Join BITCONNECT in just a few minutes. Then there's another one that says, see how to make huge profits with BITCONNECT. Enter your information below for free videos on how. And then in paragraph 160, it talks about Mr. Arcaro's training course, which includes a section called BITCONNECT, Bitcoin to BITCONNECT, transfer and start earning, exclamation point. And then specifically says that the graduates were directed to open BITCONNECT accounts using defendant Arcaro's and his team's referral links. So it's not the only allegation of the Second Amendment Complaint. That makes clear that these materials were promotional in nature, a word that's used throughout the Second Amendment Complaint. But I think that makes it really clear. And if there are no more questions, I would simply ask that the court revert to district court dismissal of the claims against the promoter defendants and remand for further proceedings. Thank you all. We have your case under submission.